O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **IRENE WILSON,** | ) | NO. EDCV 07-1206-MAN |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on October 9, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's claims for supplemental security income benefits ("SSI"), a period of disability ("POD"), and disability insurance benefits ("DIB"). On December 14, 2007, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on June 11, 2008, in which plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and defendant seeks an order affirming the Commissioner's decision. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her application for SSI on February 20, 2001. (Administrative Record ("A.R.") 114-16, 319.) Plaintiff claims to have been disabled since April 1, 1985, due to hypertension, chest pain and palpitations, and depression. (A.R. 13, 114.) At the administrative hearing level, plaintiff amended her alleged disability onset date to February 20, 2001, and also requested a closed period of disability from February 2001, through February 2002. (A.R. 12, 18, 30-31, 320, 522, 531.) Plaintiff has past work experience as a telemarketer, security guard, caretaker, and office helper. (A.R. 13, 163, 329, 542, 544, 547.)

The Commissioner denied plaintiff's claim initially and upon reconsideration. (A.R. 70-71.) On June 20, 2002, and September 9, 2002, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge John Belcher ("ALJ"). (A.R. 25-69.) On September 23, 2002, the ALJ denied plaintiff's claim, and the Appeals Council subsequently affirmed the ALJ's decision. (A.R. 4-5, 12-21.)

On April 17, 2003, plaintiff filed a Complaint in this Court in Case No. EDCV 03-00427-MAN. On March 30, 2006, this Court reversed the ALJ's decision and remanded the case for further administrative proceedings ("2006 Remand Order").[1] (A.R. 350-83.) On June 21, 2006,

---

[1] In its 2006 Remand Order, the Court ordered the ALJ to: (1) further develop the record regarding plaintiff's hypertension, vision, and cardiac problems; (2) reconsider his findings regarding plaintiff's

the Appeals Council remanded the case to the ALJ for compliance with the Court's 2006 Remand Order.[2] (A.R. 349.)

On June 12, 2007, plaintiff, who was represented by counsel, testified at a supplemental hearing before the same ALJ. (A.R. 520-54.) On June 29, 2007, the ALJ again denied plaintiff's claims; that denial is at issue in this action. (A.R. 319-29.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ determined that plaintiff has engaged in substantial gainful activity since April 1, 1985. (A.R. 323.) Assessing plaintiff's "significant work activities for most years since 1985," the ALJ found that such work activity: had "rendered her insured for Title II benefits and extended her date last insured to 2010"; and "also supports the finding that at all relevant times, [plaintiff] has either engaged in or has been capable of engaging in substantial gainful activity." (*Id.*)

The ALJ found that plaintiff has a single "severe" impairment of hypertension. (A.R. 323) The ALJ further found that plaintiff's mild asthma, treated glaucoma, depressive disorder, and history of alcohol abuse are "non-severe," as they have no more than a minimal effect on

---

claimed symptoms and limitations; and (3) seek testimony from a vocational expert, if necessary. (A.R. 366-81.)

[2] On October 25, 2006, while plaintiff's SSI application was pending on appeal, plaintiff filed an application for a POD and DIB, which was expedited to the hearing level and consolidated in the decision now at issue. (A.R. 320, 396, 522.)

plaintiff's ability to engage in work-related activities. (*Id.*)  The ALJ found that plaintiff's cardiac problems and low back pain are not medically determinable impairments. (*Id.*)

The ALJ further determined that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (A.R. 325.) The ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform "light exertion" work.[3] (A.R. 324.)

Based on the medical record, the testimony of both medical and vocational experts, and the ALJ's RFC assessment, the ALJ determined plaintiff could perform her past relevant work as a telemarketer and office helper. (A.R. 329.) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue. (*Id.*)

///
///
///
///

---

[3] Specifically, the ALJ found that plaintiff: "can lift 20 pounds occasionally and 10 pounds frequently. She has pushing and pulling limitations consistent with the lifting and carrying limitations. She can stand and/or walk for 6 hours out of an 8-hour work day, and she can sit for 6 hours out of an 8-hour work day. She cannot balance or climb ladders, ropes, and scaffolding. She can occasionally bend and stoop. She should avoid concentration [*sic*] exposure to fumes, odors, dusts, toxins, and gases, and she should avoid all exposure to hazardous or fast machinery and work at unprotected heights." (A.R. 324.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following three issues:  (1) whether the ALJ considered plaintiff's claimed symptoms and limitations properly; (2) whether the ALJ posed a complete hypothetical to the vocational expert; and (3) whether the ALJ properly determined that plaintiff is capable of performing her past relevant work as a telemarketer and office helper. (Joint Stipulation ("Joint Stip.") at 4.)

**I.  The ALJ's Finding Regarding The Credibility Of Plaintiff's Claimed Symptoms And Limitations Is Affirmed.**

The Court is required to give great weight to the ALJ's credibility assessment.  <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically).  When, as in this case, there is evidence that plaintiff suffers from an impairment that could reasonably be expected to produce some symptoms, and there is no evidence of malingering, the

6

ALJ is required to make specific findings stating clear and convincing reasons for rejecting her allegations of disabling pain. Smolen v. Chater, 80 F.3d 1273, 1281-84 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 917 (9th Cir. 1993).

Plaintiff contends that "the ALJ failed to comply with the District Court's order requiring him to properly consider the plaintiff's claimed symptoms and limitations." (Joint Stip. at 4.) Specifically, plaintiff argues that the ALJ failed to consider plaintiff's "fatigue and dizziness, as well as her blurred vision, which was [*sic*] caused by hypertension." (Joint Stip. at 4-5.) For the reasons that follow, the Court disagrees.[4]

In rendering his adverse credibility finding regarding plaintiff's claimed symptoms and limitations, the ALJ properly considered plaintiff's admitted work and school activities, and the inconsistencies between plaintiff's allegations of disabling symptoms and the objective medical evidence.

First, the ALJ properly relied on evidence that contradicted plaintiff's assertion that she was not capable of performing any type of work. Plaintiff's own admissions indicate that she was able to work for significant periods during the time in which she alleges that her symptoms and other limitations were disabling. Specifically, it is

---

[4] Plaintiff also contends that the ALJ erred in his consideration of plaintiff's symptoms and limitations because the ALJ "substituted his own opinion for medical expert opinion." (Joint Stip. at 14.) This contention is without merit. The ALJ's lengthy evaluation of the evidence comprehensively and accurately summarizes the relevant medical opinion evidence of record.

undisputed that plaintiff was working part-time as a care provider for the California Department of Aging, beginning in October 2003, and continuing through at least June 12, 2007, the date of the hearing. Critically, plaintiff testified that she would have worked more hours had her employer offered them. (A.R. 539.) Plaintiff further testified that her work duties included preparing grocery lists, going grocery shopping, cooking, and taking an elderly man to his appointments. (A.R. 542.) In addition to working consistently, plaintiff testified that, in 2001 and 2002 (the years for which she seeks a closed period of disability), she attended and completed a full-time educational program to become a teacher's aide. (A.R. 539-40.) Plaintiff testified that, although she successfully completed that program and, thus, developed additional job skills, she chose not to pursue any work as a teacher's aide, because she determined that it "really wasn't what [she] wanted to do," not because she was physically unable to perform such work. (A.R. 540.)

Second, citing the conflict between plaintiff's subjective complaints and the objective medical evidence in the record, the ALJ provided the requisite specific and substantial reasons that undermined plaintiff's credibility. *See* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.")(*quoting* Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Although plaintiff's medically determinable impairments of "severe" hypertension and "non-severe," medically treated glaucoma "could reasonably be expected to produce the

alleged symptoms" about which plaintiff complains, *to wit*, fatigue, dizziness, and blurred vision, the record does not support plaintiff's allegations that these symptoms cause her to be totally disabled. Regarding plaintiff's allegation of fatigue, plaintiff testified that when she takes her blood pressure medication, it helps resolve her lightheadedness and fatigue.[5] (A.R. 39.) Plaintiff further testified that, although she had been noncompliant with her hypertension medication in the past, when she "finally decided to start taking [her medication]," she was "doing good." (A.R. 41.) In addition, treatment records from 2004 and 2005 show that plaintiff's hypertension was "controlled." (A.R. 504, 506.)

With respect to plaintiff's allegations of blurred vision,[6] plaintiff's September 2005 treatment records indicate that plaintiff's "vision [was] doing well" at 20/25 in both eyes, and in February 2007, a consultative ophthalmological examination revealed plaintiff's corrected vision to be 20/20 in the right eye and 20/25 in the left eye.

---

[5] In the Joint Stipulation and in support of her position, plaintiff states that, "[s]ignificantly, in its decision, the District Court stated that [p]laintiff's 'claimed fatigue could flow from her medically determinable impairments.'" (Joint Stip. at 5.) To be clear, the Court's casual reference in its 2006 Remand Order to a possible connection between plaintiff's medically determinable impairments and plaintiff's alleged fatigue does not establish the existence of such a connection.

[6] It is unclear whether plaintiff is alleging that her blurred vision stems from her hypertension or her treated, non-severe glaucoma. Either way, the ALJ properly considered the relevant medical evidence of record, which indisputably indicates that these conditions are controlled with medication and cause only minor limitations, if any. (A.R. 325-27.) It is noteworthy that, as defendant correctly points out, at the September 2005 office visit at which plaintiff alleged blurred vision, she also reported that she had been "out of [prescribed eye medication] for several months." (A.R. 434; Joint Stip. at 11.)

(A.R. 326, 434, 461.) At the hearing, the medical expert confirmed that plaintiff has corrected vision of 20/20 and 20/25 and normal visual fields of vision despite her glaucoma.[7]  (A.R. 529.)

Despite the fact that the record shows that plaintiff's hypertension is controlled by medication and her glaucoma is effectively treated, the ALJ included limitations in his RFC finding that sufficiently address plaintiff's allegations of dizziness and blurred vision,[8] *i.e.*, the ALJ limited plaintiff to light exertional work and explicitly stated that plaintiff "cannot balance or climb ladders, ropes, and scaffolding, . . . and she should avoid all exposure to hazardous or fast machinery and work at unprotected heights." (A.R. 324.)

Accordingly, the ALJ properly concluded that plaintiff's allegations of disabling symptoms were not credible. *See* Fair, at 604.

///
///

---

[7] Although plaintiff contends that, according to the internet site, http://www.webmd.com, common symptoms of glaucoma include "sudden, severe blurring of vision and severe pain that may occur in the eye itself or in certain areas immediately around the eye," there is no evidence of record that plaintiff ever experienced any sudden onset of blurred vision or severe pain in and/or around the eye itself. (Joint Stip. at 11.)

[8] In October 2005, plaintiff was convicted of driving while intoxicated. (A.R. 525.) Although not a post-hoc rationale for the ALJ's decision, it cannot be ignored that plaintiff continued to operate a motor vehicle during the time period in which she contends that her dizziness and blurred vision were so disabling that she was unable to work. If, in fact, plaintiff's dizziness and blurred vision were as severe as she claims, it is unconscionable that she would risk the lives of others by operating a motor vehicle, even if she were not intoxicated.

**II.  The ALJ Posed A Complete Hypothetical To The Vocational Expert.**

Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of the claimant that are supported by the record. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). However, the ALJ is not required to include limitations for which there is insufficient, if any, supporting evidence. *See* Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Plaintiff argues that the hypotheticals posed to the vocational expert were incomplete and, thus, cannot constitute substantial evidence to support the ALJ's decision, because the questioning "failed to set out limitations associated with the plaintiff's claimed fatigue and dizziness, as well as her blurry vision." (Joint Stip. at 16.) This contention is without merit.[9]

---

[9] At the 2007 hearing, the vocational expert testified that plaintiff had past relevant work experience as a telemarketer, care giver/companion, security guard, field representative, and office helper. (A.R. 416, 541-50.) The ALJ posed the following four hypothetical questions to the vocational expert:

> I want you to assume a 49 to 50-year-old person with a high school education, training as an LVN and as a security guard as indicated in the testimony today. As well as work experience as outlined by yourself in your report and through the testimony today. [Plaintiff] would -- in my first hypothetical would be limited to lifting no more than 50 pounds occasionally, 25 pounds frequently. With unlimited ability to stand and sit. With avoidance, due to medications, from hazardous or fast-paced machinery. Would that person be able to do any of [plaintiff's] past relevant work?

(A.R. 550-51.) Further down the transcript, the ALJ posed a second hypothetical:

> If I also included in that no safety operations, no intense

11

As discussed above, the ALJ's RFC assessment included limitations that sufficiently address plaintiff's allegations of dizziness and blurred vision, *i.e.*, that plaintiff "cannot balance or climb ladders, ropes, and scaffolding . . . , and she should avoid all exposure to hazardous or fast machinery and work at unprotected heights." (A.R. 324.) To the extent plaintiff is claiming limitations in excess of the ALJ's RFC finding, the ALJ properly declined to include them in his RFC assessment and in the hypotheticals posed to the vocational expert. *See* Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005)(holding RFC determination need only include limitations the ALJ found supported by the evidence).

Therefore, this Court finds that the ALJ posited a complete

---

interpersonal interactions, would there be any other -- would she be able to do any fewer of those jobs other than security guard? I don't know if I stated that badly. Let's just say the same example with those two included, no safety operations and no intense interpersonal contact.

(A.R. 551.) In his third hypothetical, the ALJ asked:

Now if I were to limit her to 20 pounds occasionally, 10 pounds frequently. With six hours out of eight, both standing and walking and sitting, each one. With occasional stooping and bending. No ladders, ropes, or scaffolding. No balancing. No working at unprotected heights. No excessive pollutants, and working in air conditioned environment. To those other restrictions that I gave. Would she be able to do any of her past relevant work?

(A.R. 551-52.) For his fourth hypothetical, the ALJ added:

Now if I limited her to just four out of eight hours of standing and walking, and everything else was otherwise the same, would she be able to do any of her past relevant work?

(A.R. 552.) In response, based on her "knowledge, experience, education, and review of the evidence," the vocational expert opined that plaintiff could perform her past relevant work as a telemarketer and office helper. (A.R. 547, 552.)

hypothetical, based on a proper RFC determination that was supported by substantial evidence of record, even if that assessment is susceptible to more than one rational interpretation. Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004)(citing Andrews, 53 F.3d at 1041)("[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion.").

**III. The ALJ Properly Determined That Plaintiff Could Return To Her Past Relevant Work.**

At step four, the claimant bears the burden of showing that she does not have the residual functional capacity to engage in any of her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Generally, a vocational expert's opinion regarding a claimant's ability to perform her past relevant work, without specifying whether such finding is based on the claimant's ability to perform his actual prior job or the prior job as it is generally performed, is sufficient for a step four finding. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).

Plaintiff contends that the ALJ erred in determining that plaintiff is capable of performing her past relevant work as a telemarketer and office helper, because "both of these jobs are inconsistent with the plaintiff's functional limitations and the DOT [Dictionary of Occupational Titles]." (Joint Stip. at 18.) This final contention is equally without merit.

The ALJ relied on the testimony of a vocational expert, as well as on the medical evidence of record and the ALJ's RFC determination, to

conclude that plaintiff could perform the functional demands of her past relevant work as a telemarketer and office helper, both as that job was actually performed and as it generally is performed. (A.R. 329, 552.) The vocational expert testified that the office helper position is described by the DOT as light exertion and unskilled (although plaintiff performed it at the sedentary exertional level), and the telemarketer work is described by the DOT as sedentary exertional level and semi-skilled. (A.R. 416, 546-50.) Contrary to plaintiff's assertion, plaintiff retained the capacity to work as an office helper, both as that job is generally performed and as it was actually performed by her, and these DOT descriptions are not inconsistent with the vocational expert's opinion.[10] (Joint Stip. at 19, 21.)

In any event, the Court observes that, because the ALJ found plaintiff could perform her past relevant work, the ALJ need not have consulted a vocational expert. *See* Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); Miller v. Heckler, 770 F.2d 845, 850 (9th Cir. 1985). Thus, the vocational expert's testimony was useful, but not required. Plaintiff has not, therefore, carried her burden of proving that she was unable to return to her former work.

Accordingly, substantial evidence supports the ALJ's finding that plaintiff is not disabled and can perform her past relevant work as a

---

[10] As discussed above, plaintiff has been working as a part-time care provider since 2003. Defendant correctly notes that the "ALJ's elimination of the caretaker job appears to have been based on a hypothetical that included a restriction against work involving close interpersonal contact (AR 551). However, the RFC ultimately adopted did not include such a limitation (AR 324). Thus, it appears that the caretaker position would also be consistent with the RFC (AR 416, 551-52)." (Joint Stip. at 20.)

14

telemarketer and office helper. These jobs do not require the performance of work-related activities precluded by plaintiff's RFC as properly assessed by the ALJ.

**CONCLUSION**

For all of the foregoing reasons, the Court finds that: the Commissioner's decision is based on the correct application of the proper legal standards and is supported by substantial evidence; and neither reversal of the ALJ's decision nor remand is warranted. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2009

                                              /s/
                                  MARGARET A. NAGLE
                          UNITED STATES MAGISTRATE JUDGE